*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD SHERMAN MAYO, JR.,

        Plaintiff-Appellee,

v

DEANA LEE MASKELL,

        Defendant-Appellant.

UNPUBLISHED
May 11, 2023

No. 359026
Berrien Circuit Court
LC No. 2020-002611-DO

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

In this domestic relations case, defendant appeals as of right the trial court's judgment of divorce. On appeal, defendant challenged the trial court's decision to distribute the marital property 50/50 and refusal to invade plaintiff's separate property. Additionally, defendant challenged the trial court's decision to deny both parties spousal support and make that decision nonmodifiable. Finally, defendant challenged the trial court's decision to limit defendant's award of attorney fees to $2,500. We affirm.

This case stems from the parties' divorce. The parties married in 2006 and remained married for 14 years but lived separately the last 7 years of the marriage. Plaintiff was employed by Whirlpool from 1991 to 2014 and had a Whirlpool pension worth approximately $240,000. Plaintiff was employed at Honeywell during the marriage and had a 401(k) investment account through that employer. When plaintiff filed for divorce in July 2020, he was employed at Sieman's Healthcare Diagnostic, had an associated retirement account, and made over $90,000 annually. Throughout the marriage, defendant did not work. She had a bachelor's degree in criminal justice completed before the marriage and experience in computer network administration.

At the time of the divorce, plaintiff was 57 years old and defendant was 56 years old. The parties had no children together. Plaintiff owned a home in Evansville, Indiana, and the parties owned a home in Caloma, Michigan. Both homes were subject to mortgages. Additionally, the parties owned a 2002 Jaguar and a 2006 Jaguar. Plaintiff alleged that he initiated the divorce because the parties had lived separate lives over the preceding seven years, and he acted more like defendant's caregiver than defendant's spouse.

-1-

At trial, defendant testified that, during the pendency of the divorce, she applied for three jobs commensurate with her degree in criminal justice, but she had not found employment. She explained that she sent out only three job applications because of the COVID-19 pandemic, lack of transportation, and anxiety and depression. She also testified that her degree was 15 years out of date, and she would have difficulty finding a job in that field. After the close of proofs, plaintiff lost his job at Sieman's. By the time the trial court reopened proofs, plaintiff had a new job at Alexandria Holding for an annual salary of $65,000.

The trial court awarded the marital estate 50/50 after finding that the marriage was 14 years in duration, defendant had not engaged in gainful employment throughout the duration of the marriage; plaintiff was the primary wage earner; the parties lived separate lives for half the marriage, and there was no significant age disparity between the parties. As to defendant, the trial court held that wife could maintain gainful employment as she did before the marriage and that no physical health challenges precluded her from current employment. The trial court awarded plaintiff possession of the two homes, but it ordered him to refinance each and pay defendant 50% of the equity. The trial court also relieved defendant of liability for the homes' mortgages.

The trial court declined to award spousal support and made that decision nonmodifiable. The trial court premised this decision on its findings that defendant could maintain gainful employment but that she had not exercised due diligence in her job search. Notably, defendant admitted that she had no idea what Michigan Works was and no idea what the minimum wage was. The trial court explained that the parties were the same age and had no health barriers to employment.

In recognition of the parties' income disparity, the trial court ordered plaintiff to pay $2,500 of defendant's attorney fees. The trial court premised this decision on defendant's testimony that she had already paid a significant portion of the fees owed.

Defendant now appeals.

I. MARITAL ESTATE

Defendant first argues that the trial court's distribution of the marital estate was inequitable because she will need to liquidate her share of the marital estate to sustain her former standard of living. She requests that this Court remand to the trial court with instructions to grant defendant 60% of the marital estate, to invade plaintiff's separate assets, or to grant defendant all equity in the marital home.

When examining a trial court's division of the marital estate, this Court first reviews the trial court's findings of fact under the clearly erroneous standard. *Hodge v Parks*, 303 Mich App 552, 554-555; 844 NW2d 189 (2014). A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake was made. *Smith v Smith*, 328 Mich App 279, 286; 936 NW2d 716 (2019).

If this Court upholds the trial court's findings of fact, this Court must then determine "whether the dispositive ruling was fair and equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 152; 485 NW2d 893 (1992). The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable. *Id*.

This Court may modify judgments to rectify mistakes, interpret ambiguities, and alleviate inequities. *Hagen v Hagen*, 202 Mich App 254, 258; 508 NW2d 196 (1993).

A judgment of divorce must include a determination of the property rights of the parties. See MCR 3.211(B)(3). The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). "[T]he trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Id*. at 717. To reach an equitable division, the trial court should consider:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks*, 440 Mich at 159-160.]

The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight. See *id*. at 159. The trial court must make specific findings regarding the factors it determines to be relevant. *Woodington v Shokoohi*, 288 Mich App 352, 363-364; 792 NW2d 63 (2010).

Michigan courts generally divide only the marital estate during a divorce proceeding and may not normally invade one spouse's separate property. See *Korth v Korth*, 256 Mich App 286, 291; 662 NW2d 111 (2003). The Legislature has authorized courts to invade a spouse's separate assets when the property awarded to one spouse is "insufficient for the suitable support and maintenance of either party and any children of the marriage as are committed to the care and custody of either party . . . ." MCL 552.23(1).

After reviewing the record, this Court is not convinced that the property distribution is unfair or unequitable. The trial court applied the *Sparks* factors and made findings as to the parties' ages, health, status in life, and earning abilities, as well as other factors. The trial court recognized that the parties were in a 14-year marriage, a duration that is neither long nor short. The parties were of similar age, and no health concerns diminished their abilities to work. Plaintiff was the wage earner, and defendant was a homemaker. Notably, the parties maintained separate lives for 7 of those 14 years. Defendant had a bachelor's degree, but she did not engage in gainful employment throughout the marriage.

On the basis of these findings, the trial court ordered a 50/50 division of the marital estate. The marital estate included the two homes, the 2002 and 2006 Jaguar vehicles, and the portion of plaintiff's pension and retirement accounts from Whirlpool, Sieman's, and Honeywell acquired during the marriage. Plaintiff was awarded the residences. He was ordered to hold the remaining debt for both properties alone. Plaintiff was ordered to refinance or appraise the homes and pay defendant half of the equity in the houses forthwith. The trial court awarded plaintiff the marital properties because he could afford to refinance the properties and pay defendant her half of the equity. The trial court explained that defendant would not be able to afford refinancing the property or paying the mortgage. The trial court awarded the 2002 Jaguar to defendant and the 2006 Jaguar to plaintiff.

Defendant's argument as to why she should be awarded 60% of the marital estate, all the equity in the marital home, or invade into plaintiff's separate property is premised on her argument that she has no income and will have to dip into her marital assets to support herself. The trial court plainly rejected the notion that defendant could not maintain gainful employment and that finding was not clearly erroneous. The record reflects that defendant was awarded approximately half of the marital property and none of the liability that accompanied some of that property. She was awarded a vehicle and has the ability to find gainful employment. Therefore, defendant has failed to show that the 50/50 distribution is inequitable and that plaintiff's separate property must be invaded to provide suitable support.

## II. SPOUSAL SUPPORT

Defendant argues that the trial court abused its discretion when it did not award her spousal support and made it nonmodifiable. We disagree.

This Court reviews the trial court's findings underlying an order of support for clear error. *Smith*, 328 Mich App at 286. The findings are presumptively correct and the burden is on the appellant to show clear error. See *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake was made. *Smith*, 328 Mich App at 286.

If the trial court's findings are not clearly erroneous, this Court must then determine whether the dispositional ruling was fair and equitable in light of the facts, *Sparks*, 440 Mich at 151-152, or constituted an abuse of discretion, *Woodington*, 288 Mich App at 355. An abuse of discretion occurs when the result is outside the range of reasonable and principled outcomes. *Id*. The trial court's decision as to spousal support must be affirmed unless this Court is firmly convinced that it was inequitable. *Sparks*, 440 Mich at 151-152.

First, the trial court did not abuse its discretion when it made the denial of spousal support nonmodifiable. An award of spousal support is subject to modification on a showing of changed circumstances. See MCL 552.28; *Lemmen v Lemmen*, 481 Mich 164, 166; 749 NW2d 255 (2008). Although the parties can waive the right to modify spousal support under MCL 552.28, the trial court cannot on its own order that an award of spousal support be unmodifiable. See *Richards v Richards*, 310 Mich App 683, 693; 874 NW2d 704 (2015). In contrast, a final divorce judgment that does not award spousal support may not be subsequently revised or altered when the issue is not reserved. *Ballentine v Ballentine*, 357 Mich 7, 8; 97 NW2d 620 (1959); *Rickner v Frederick*, 459 Mich 371, 377; 590 NW2d 288 (1999) ("However, it is well settled that where no provision is made for alimony or the question is not reserved, the court is powerless to grant any alimony in the future."). In this type of scenario, the trial court does not have the authority to revise the judgment to make an award. See *Rickner*, 459 Mich at 379; *Ballentine*, 357 Mich at 8. A judgment of divorce must include "a provision reserving or denying support, if spousal support is not granted; a judgment silent with regard to spousal support reserves it." MCR 3.211(B)(4).

Defendant cites *Koy v Koy*, 274 Mich App 653; 735 NW2d 665 (2007), for the contention that the trial court erred by barring spousal support and declaring the "issue of spousal support [ ] nonmodifiable."*Koy* is inapplicable because the plaintiff in that case was awarded spousal support in the judgment of divorce. *Id*. at 660. Likewise, *Richards*, 310 Mich App at 692-693, is

inapplicable to the facts of this case because the court awarded spousal support for only a limited time with no possibility of modification.

Defendant is correct that when granted, spousal support cannot be nonmodifiable absent waiver. In this case, however, defendant was not granted spousal support, and the issue was not reserved for future resolution in the judgment of divorce. The opinion explicitly stated that the decision to bar an award of spousal support was nonmodifiable. MCL 552.28 was not violated because it was not triggered. The statute itself states, "*after* a judgment for alimony or other allowance for either party or a child, . . . the court may revise and alter the judgment . . . ." MCL 552.28 (emphasis added). Therefore, the trial court did not abuse its discretion when it held that its denial of spousal support was nonmodifiable.

Second, the trial court did not abuse its discretion when it denied defendant an award of spousal support. The award of spousal support is a matter committed to the trial court's discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). Courts do not apply a strict formula when calculating support; instead, courts order what is just and reasonable under the totality of the circumstances. *Id*. at 30. Courts should consider:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

Trial courts should make specific factual findings for each relevant factor. See *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010).

Defendant argues that she presented sufficient evidence that she was entitled to some amount of spousal support from plaintiff because of the income disparity between the parties and the fact that plaintiff was awarded all real property that the parties owned. As a consequence, defendant argues that she will need to liquidate her share of the marital estate to make ends meet.

The trial court undertook an analysis of the pertinent factors in reaching its spousal support determination, holding that neither party was entitled to spousal support. The trial court explained that the parties were of similar age and had no physical ailments preventing them from working. The parties did not share any children. The trial court also found that over the past 7 years of the 14-year marriage, plaintiff and defendant lived separate lives. Defendant did not work after entering the marriage and did not attempt to find gainful employment when she started living separately from plaintiff or when plaintiff filed for divorce. Defendant was unable to show that she made reasonable efforts during the divorce proceedings to find employment for which she had the appropriate skill set. On the basis of the record, the trial court did not clearly error when it found that defendant was capable of gainful employment but made an inadequate attempt to find employment. While defendant received temporary spousal support of $389 per pay period during

the pendency of the divorce, nothing in the temporary orders indicated that the award would continue indefinitely or after the divorce judgement was entered.[1] Based on its evaluation of the *Olson* factors, the trial court's decision to deny spousal support was not clearly erroneous.

Given that the trial court's findings are not clearly erroneous, this Court must determine whether the dispositional ruling was fair and equitable in light of the facts. See *Sparks*, 440 Mich at 151-152. The trial court awarded plaintiff the marital homes, but it required him to refinance or appraise both homes and pay defendant half of the equity when valued. Further, defendant was entitled to half of the marital portion of plaintiff's retirement accounts. Plaintiff was terminated from his job with $95,000 annual salary during the divorce, but he in good faith found a new job paying $65,000 in annual salary.

The trial court was not persuaded that defendant had done what she could to find gainful employment during the last seven years of the marriage and throughout the pendency of the divorce despite being capable of working. Therefore, defendant's argument that the trial court's failure to award spousal support will leave her impoverished is not supported by the record. Defendant was awarded half of the marital estate and was capable of supporting herself through gainful employment. Under the totality of the circumstances, the trial court's holding was just and reasonable.

III. ATTORNEY FEES

Finally, defendant argues that the trial court abused its discretion when it only awarded her $2,500 in attorney fees instead of $18,000. We disagree.

This Court reviews a trial court's decision to award attorney fees as part of a judgment of divorce for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). This Court reviews the findings underlying the trial court's decision for clear error. *Id*.

A party to a divorce is not entitled to attorney fees as a matter of right. See *id*. Parties to a domestic relations action may request that the trial court order the other party to pay all or part of their attorney fees. MCR 3.206(D) states in relevant part:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

---

[1] The October 14, 2020 Temporary Order awarded defendant interim spousal support pending an evidentiary hearing regarding support and attorney fees; she also received exclusive use of the home and plaintiff was ordered to pay all expenses related to the home as well as the parties' bills and insurance. Defendant testified that plaintiff stopped paying spousal support in November 2020, that the cable and internet went out when plaintiff switched to a different package, and she kept approximately $4000 in stimulus checks because plaintiff was not sharing money with her or paying her.

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that

(a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay . . . .

"The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007). "[A]party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support." *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008) (quotation marks and citation omitted).

The trial court ordered plaintiff to pay $2,500 of defendant's attorney fees. Defendant's counsel requested $18,504. The trial court acknowledged that there was a clear income disparity between the parties and granted $2,500 on the basis of defendant's representation to the trial court that a significant portion of the attorney fees had been previously paid. Defendant testified that she paid $8,972 after she borrowed money from a friend. She owed a remainder of $7,032 in attorney fees.

The trial court did not abuse its discretion in granting an attorney fee award of $2,500. While plaintiff was employed and defendant was not, clearly defendant's lack of effort to obtain gainful employment was considered when determining her ability to bear the expense of the divorce action as was the fact that she left the marriage with no debt obligations. Moreover, plaintiff's obligation to refinance two pieces of property and carry the mortgage obligations also impacted his ability to pay, per MCR 3.206(D)(2)(a). Given that only $7,032 in outstanding attorney fees existed, the trial court did not abuse its discretion in awarding the payment of approximately 36 percent of the remaining fee.[2] Therefore, defendant failed to demonstrate that she was unable to bear the expense of the action <u>and</u> that plaintiff was able to pay all her attorney fees. Accordingly, the trial court did not abuse its discretion when it granted $2,500 in attorney fees.

Affirmed.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney

---

[2]Counsel for defendant informed the court that preparing for and attending trial and filing closing briefs would add $2,500 to the bill.